I can't exactly say it's deja vu all over again, but I do think this panel has some history with this case, and therefore some familiarity. This is Free Speech Coalition et al. versus the Attorney General, Mr. Murray. May it please the Court, I am Michael Murray, I do represent the appellants, as I did exactly one year ago today. It was December 9th last year. That escaped me. Mr. Murray, could in as much as this court granted rehearing in the immediate wake of Reed, could you begin, could both sides begin indicating to us how Reed has or has not altered the landscape for First Amendment purposes? Yes, Your Honor. I would like to reserve three minutes of my time for rebuttal. Your Honor, I think that the the Reed decision is a is an extremely important landmark decision that clarifies an area of the law that that needed clarification. It seems to me quite clear that Reed was pretty unequivocal, pretty unqualified, pretty straightforward, and allowed for no exceptions. A law that is content-based on its face calls for strict scrutiny rather than intermediate scrutiny, regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech. It expressly rejected the framework of Ward versus Rock against Racism in terms of the argument that Ward authorized intermediate scrutiny of a content-based law if it served a substantial governmental interest unrelated to the content of the expression. And that framework, the court said, applies only if the statute is content-neutral. What was interesting, they said, is that Ward actually provided more protection for the First Amendment rather than less, because Ward stood for the proposition, the court said, that in the case of a content-neutral law, if you can prove that the statute is not unrelated to the content of expression, you still get strict scrutiny. But the contrast then that was drawn in Justice Thomas' opinion was to say, but that's where you're dealing with a content-neutral statute. Whereas here, you have a content-based statute, you cannot get into that. Exactly. Well, do we have a content-based statute? The government urges that the statute here addresses a non-communicative harm associated with the production of sexually explicit speech, the sexual exploitation of minors, rather than the content of the speech itself. So isn't the real heart of the problem who's right on that score? Is it content-based or not? Well, I think Reed makes it clear that you look at the statute, not the purpose. Well, but this statement that I'm reading out of the government's response doesn't look at the purpose, it's what the statute addresses. Correct. That is the substantial governmental interest that is furthered by the statute, according to the government. But Reed makes it clear that you look at... But in Renton, wasn't the substantial governmental interest all of these ancillary things that were caused by the adult movie theaters? Yes, and I will address Renton in a moment. But one of the things I want to make clear, Your Honor, in answer to your question is that this statute is content-based on two levels. It only applies to sexual images, constitutionally protected sexual images, in our case. That's content-based. And it treats actual sexually explicit images less favorably than simulated sexual images. Much like the town of Gilbert treated directional signs less favorably than other signs. Is that your strongest argument, though? Isn't your first argument your stronger argument? That it's content-based, period, because both, yes, both 2257 and 2257A define the triggering event by the content of expression. Should we make anything of the frequent invocation in the majority opinion of the language on its face, on its face, on its face, that seemed to be emphatic by its repetition? Yes. What do we draw from that? That you have to look at the language of the statute. And go no further. And go no further. And if the language of the statute depends for its application on the content of speech, which it does here, because it only applies to sexually oriented visual depictions, which is the content of speech, if that's the analytical path that Reed requires us to take, if, then the government must climb the high hill of strict scrutiny. Exactly. Do you have any problem with finding a compelling interest if we're applying strict scrutiny? We've already agreed that the protection of children is a compelling interest. In one of the earlier iterations of this case, I just assumed that the traffic safety and aesthetics are compelling interests. They went on to hold that the ordinance was still unconstitutional. Here, the problem with these statutes is that they clearly do not satisfy the least restrictive means test of strict scrutiny. They cannot possibly survive strict scrutiny. But to follow up on Judge Sirica's question, following, again, your analysis as you contended is compelled by Reed, that's what we're left with. Yes. We look at a statute on its face. We go to strict scrutiny. You have conceded substantial government interest. This case comes down, in your view, to strict scrutiny. Absolutely, Your Honor. Let me back up. The government places much reliance on the American Library case out of the D.C. Circuit. And you don't address it, obviously, because we had briefs filed at the same time. But how do you distinguish that case, or why would it not apply here? Because it talks about this exact regulation. Well, because if you read, when you read the opinion, the first statement they make about whether intermediate or strict scrutiny applies, they quote heavily from Ward versus Rock against racism. So it was pre-Reed. Yes. They then go on to explain, they talk about O'Brien, and then they talk about O'Renton as examples of statutes that have a content-neutral purpose, and therefore could be judged. And from there on in, the discussion is based on it being a content-neutral regulation. Exactly. And on Ward. But does Reed mean that we can no longer take into account some of the rationale in the American Library? Namely, the unique nature of this or universal application, without which any other means would be ineffective? Well, Reed stands for the proposition that strict scrutiny applies. When you apply strict scrutiny, it's got to be a compelling governmental interest, and the least restrictive means has to have been used. And that's clearly not the case here. There are many lesser restrictive means, including the child pornography laws themselves, including the certification procedure. But the legislature has decided that the child pornography laws are not sufficient to deal with the problem here, which the problem being the inability to determine through observation alone what the age is of these individuals that fall within that range around age 18. Well, all I can say, Your Honor, is that this is not the least restrictive means. As a matter of fact, it's not. Well, as I said, you could use the certification procedure that applies to 2257A. You could have a statute that requires IDs. You're talking about rewriting the statute. Those are lesser restrictive. Excising the problematic parts or putting additional restrictions in. What I'm saying, Your Honor, is that in judging whether the statute is unconstitutional, we have to decide, is the remedy the least restrictive means? Built into 2257A is a certification procedure. The least restrictive and available and effective means. The least restrictive possible means that effectively solves the problem. Yes, Your Honor. Now, is the record currently sufficient or given a new standard, would this be appropriate for the district court, for us to send it to the district court, for the district court to permit additional evidence based upon a new test, if you will? Your Honor, I think the record is sufficient. You can provide independent review of the record. We think this court is in a position to make this decision itself. As a matter of fact, when you go back and read your opinion last time, you kept stressing, in response to many of our arguments, that yes, but you don't have to use the least restrictive means. And the suggestion was clear that the court understood that there would be lesser means to solve this problem if strict scrutiny applied. But the problem is that the district judge tried this case under intermediate scrutiny. And I know you're going to get to the secondary effects argument. And perhaps the government would have put on different evidence. Certainly that's an option, Your Honor. If it had been under strict scrutiny, they would have understood what the burden was. Certainly, Your Honor, that would be a permissible result if Your Honor felt it necessary to go back to the district court. We don't think it's necessary, but obviously that's Your Honor. How do you distinguish Renton? Or what do we do with it? Okay, here's Renton. Renton is zoning, only zoning. It stood for the prology. It doesn't say it's only zoning. Exactly. The Supreme Court has never explicitly said that secondary effects doctrine is employed only in zoning or municipal regulatory cases, right? Well- I will concede that the cases arise out of those facts, whether we're talking about Alameda books or whether we're talking about Renton. But there's no explicit language so limiting the doctrine, is there? Two answers to that. They've never applied it outside regulating in zoning brick and mortar adult bookstores and adult nightclubs. But you've got to look at Justice Kennedy's controlling opinion in Alameda books, because he makes the point clear. That was the opinion that is the holding of the court. He went on to say, you know what? This regulation is actually a content-based regulation. Well, he actually has some problems, it would seem, with the doctrine itself. Because in that separate opinion, he indicates that the bifurcation between content-neutral and content-based is not as easily described and maintained as it may appear, right? Yes. But he goes on to say the zoning context provides a built-in legitimate rationale which rebuts the usual presumption that content-based restrictions are unconstitutional. Isn't it safe to say, and I realize you rely heavily on the Kennedy concurrence and contend that it really is the controlling, because it's the fifth vote, really the controlling opinion. Isn't the analysis of Justice Kennedy really nothing more than the application of I mean, it's pure negative externalities policy, right? Those were the secondary effects, yes, that he was concerned about. So why is that not equally applicable to this setting and the argument that sexual images of minors are a secondary effect of the regulated activity? Because the regulated activity is constitutionally protected images of adults. They can't, by logic, cause unprotected child pornography, unlike the constitutionally protected materials in the adult bookstores actually did cause the secondary effects, they claim, of increased crime in the neighborhoods. There's a disconnect, Your Honor, and if you were to go down that path, then it would be easy to sidestep any content-based... You argue, I believe, alternatively, whether it's in your petition for rehearing or whether it's in your supplemental brief or both, I don't recall, but you argue at least alternatively that Reed has overruled the secondary effects doctrine. We can't go that far, can we? You don't need to, because we mainly argue that it's inapplicable and it would do violence to Reed to apply it outside the context of the zoning of adult bookstores in adult... Which the Seventh Circuit did a day or two ago. Yeah, they applied it in the adult bookstore context. They said that it didn't upend Renton when it came to zoning of adult bookstores. But this is a freestanding statute, has nothing to do with zoning, has nothing to do with land use, and you can use it to sidestep, if the theory is correct, any content-based regulation could be said to... in Reed. They could have said secondary effects because the purpose of that law was to eliminate safety problems. And they did, although Justice Kagan did, I think, cite the case once. And so I see my time... I just want to say one thing... Go ahead. We'll give you as much time as my colleagues want to query. The... as I said, the context of zoning is what makes Renton inapplicable to this case. This is a freestanding statute, has nothing to do with zoning, and you would upset all content-based strict scrutiny of any law that could be said to deal with a harm that is non-communicative, which is virtually any content-based law. I wanted to just say one thing. Los Angeles v. Patel cannot be distinguished from the subsection C and F5 of 2257 and 2257A, and it requires those statutes, those provisions to be struck down facially under the Fourth Amendment. You cannot... this exact same ordinance, virtually, that was struck down in Patel facially is a mirror image of the statutory provisions that we've challenged under the Fourth Amendment. And so we urge the Court to expand the relief granted under the Fourth Amendment from not only striking down the regulation, but striking down those sections of the statute. Is this a special needs case? No. And would an administrative subpoena satisfy your concerns? Well, certainly a subpoena would at least provide for pre-enforcement review, which is one of the characteristics that Patel said the Los Angeles ordinance failed to provide. Pre-enforcement review before you're accused of a crime for not turning over your records is in fact a requirement of the Fourth Amendment, even in the administrative search exception rule. So this statute, on its face, now is unconstitutional under the Fourth Amendment. What Congress could do to rewrite it is up to them. May I have a question on the least restrictive means? Yes. Would an age cutoff, you know, 25 or 30, which are the two figures in the evidence, would that be sufficient? Yes, that would be a lesser restrictive alternative, as would applying it. Remember, this applies to private images of adults in their home. That can't be the least restrictive means, so you'd have to cut that out as well. Or you could have an age requirement. You could limit it to commercial producers, primary producers. The other thing is it applies to secondary producers who have no contact. That would require revisiting our first opinion. But I think Reid demands that we all reconsider the earlier opinions, Your Honor, as does Patel. Could you – I'm sorry. No, no. Yeah. To what – how do we deal with Williams-Uly, where the Supreme Court found a special interest to be protected? Obviously, it involved a ban. And yet, on the least restrictive analysis, they said that recusals and campaign limits were not sufficient, did not qualify as sufficient. Is that a troubling case for you? How would you distinguish that? I think that's – that was an application of strict scrutiny, and one of those rare instances where even under strict scrutiny, a rule was upheld. And that can happen. Here, I don't think it can happen, Your Honor, because, as I said, you've got the child pornography laws. You've got the certification procedure that is already built into one of the statutes that would be a less restrictive means. You've got requiring IDs for people who are 26 or 30. You've got not applying it to personal images. All kinds of lesser restrictive – this statute is so broad, as Your Honor's found in terms of the universe of images that it covers, that it can't possibly be the least restrictive means of alleviating the narrow concern of whether or not someone between the ages of 15 and 24 will be confused as either an adult or a minor. If I recall, Williams-Uly may have used some language suggestive of something less than perfection was needed for purposes of meeting strict scrutiny. I assume that your position is that what this statutory scheme requires is far less than perfect. Indeed. In what respects? In all the respects that we've identified. The application to the private images that are ubiquitous in our society now and that do not implicate the government's interest. The application to obviously mature adults, which Your Honors have said does not implicate the government's interest. The application to materials that are not commercially produced but are exchanged among citizens for their own private uses where age cannot possibly be a confusing problem. So this is not a question of simply a lack of perfection. The only perfection that is required is that people who miss even one little aspect of the requirements can be convicted of a felony. Perfection is required of the people who produce images because if you don't alphabetize them, if you don't have them indexed properly, you can be convicted of a felony. That's a serious, serious matter for people who are confronted with this statute. If we're not prepared to say that Renton is specifically, deals only with zoning and that really is its only applicability, how would you articulate the proposition that the secondary effect, there is no secondary effect here in terms of preventing child pornography. Your opponents liken that aspect and that it addresses the child pornography piece, they liken that to a secondary effect of the adult theaters. How would you articulate that this is not a secondary effect situation? To be analogous, let alone applicable, one would have to conclude that the creation of sexual images of adults that are constitutionally protected cause the adverse secondary effect of child pornography, which by definition they cannot. In the Renton cases, the constitutionally protected speech was the thing that caused the increased crime. There's no causal connection here between images of adults and unprotected child pornography. It's the difference between But that is the theory, that by not regulating this production of sexual images of adults there is a cause, a causal relationship. Is it not? No, I think the theory is precisely what was championed before, that the prevention of child pornography may be the government's benign motive, content neutral justification, or even lack of animus toward the ideas contained in the regulated speech. Or you might say it's the predominant or primary effect, but not a secondary effect. Yes, Your Honor. I think what Reid rejects is that notion that even if this statute has that benign purpose, that it's designed to further the protection of children, designed So you distinguish between purpose and effect. Purpose versus ripple effect, if you will. Yes. A secondary effect, it seems to me, has to have a causal connection to the constitutionally Some may perhaps an unrelated causal connection. I mean, it's not related to the content at all. It's not related to the content, whereas the child pornography is related to the content. Yes, Your Honor. But again, strict scrutiny applies if the statute is content-based, regardless of whether the purpose is unrelated to content. Thank you very much. Thank you. We'll have you back on rebuttal. Thank you, Mr. Murray. Ms. Murphy. May it please the Court, Anne Murphy for the Attorney General. Your Honors, you wanted us to address how Reid has altered the landscape here. And I think that in the context of regulations that make distinctions based on the expressive communicative element of speech, what Reid says is that you can't rely on the government purpose to say that a simply look at the government's purpose and conclude that a distinction is content-neutral, that under those circumstances you need to look at the statute and see, and if it does make distinctions, then it's content-based. But that doesn't extend into the situation, the secondary effects analysis situation where the government, in a very meaningful way, is not regulating communicative content at all. It's simply regulating a specific harm that happens to be associated. But here it's regulating communicative conduct. Here the distinction is triggered based on the communicative content. And that's exactly what Reid says. It targets speech based on its communicative content. And here the communicative content is sexually explicit. Is it not? But Your Honor, our position is that the speech is not targeted on that basis. If you look at Justice Kennedy's opinion in Alameda Books, he says, these are the cases where you can get the effect. And so the point here is that Congress wanted to make sure that the people shown in those sexually explicit images were not 18 years old. It just so happens that the only images that address that interest happen to be sexually explicit interest. But it seems extremely unlikely that the court, by writing very broadly in Reid, which was a case about an ordinance that nobody thought was constitutional. But the court knew very well that it was writing broadly. It had several concurrences with the judgment that made quite clear that despite their joining in the judgment, were not entirely satisfied with the reach of the opinion. So everybody knew it was broad, and yet there were the votes. But there's also like votes within the votes, which is, you know, why, I mean, I think it was you, Your Honor, who asked, is this content-based or content-neutral? And I think that's an incredibly difficult question to answer after Reid. Well, what I mentioned was that the Kennedy concurrence that you referred to described the difficulty in drawing that line many times. All right. We are compelled, however, by Reid to at least attempt to draw that line. And so my question would be, in the wake of Reid, why is this not, by reference to matter that is communicative content, clearly, communicative content that is clearly depictions, et cetera, of sexual activity, not content-based. Isn't that an entire topic, as a term is later used in the opinion, either in Justice Thomas' opinion or one of the concurrences? And if so, it's clearly content-based, right? But that's not true under the Renton line of cases. I haven't skipped yet to secondary effects. If you're on the secondary effects... And I actually disagree. I think the opinion in Reid, of course I have it here, it does talk about, you know, drawing distinctions based on communicative content. Our position is that's not what this type of statute does. It draws distinctions to target the harms. But you're saying purpose. When you say to target, we can't have a purpose... But I think you can. I think Reid says, when the government is actually trying to, when all that's happening is the government's looking at the communicative effect of messages, like so, you know, your ideological sign is different from your religious sign. It's all based on the experience of the listener. Under those circumstances, you cannot look to the government purposed as a way of saying that this is content neutral. But that's why the Renton cases are so different and why the court struggles with those. There's a sense in which what I'm resisting is the idea that the distinction is based on communicative content, because it's really not. It's based on the fact that this harm is only associated with that type of image. Are you arguing that that is through the application or by virtue of the application of the secondary effects doctrine? Yes, I think that's right. I thought we were taking this step by step, and that was as Mr. Murray's argument and the questions to him framed the steps. First of all, the majority opinion in Reid emphatically requires us to confront what's on the face of the statute. It focuses us clearly on that. And that's right, but it did so in a specific context. I mean, I think it would be a mistake to read... It did so by making very clear and broadly, to use your terminology, that it is regardless of the government's benign motive, content neutral justification, or lack of animus toward the ideas contained in the regulated speech. That's strong stuff. It is strong stuff, and it's said in the context of a holding in which the distinctions drawn by the ordinance was so content-based that, as I say, nobody on the court thought that this statute was constitutional. But the fact that the court wrote broadly doesn't mean to say that it's somehow meant to wipe out all zoning for adult theaters. I mean, that's just a remarkable... In Brenton, Kennedy says, and zoning regulations do not automatically raise the specter of impermissible content discrimination, even if they are content-based, because they have a prima facie legitimate purpose, to limit the negative externalities of land use. Isn't that what Reid rejected, the idea that we say, oh, but if they have a legitimate purpose, then they're okay, even though they're content-based? Your Honor, I completely agree with you, to the extent that the statute is dealing with expressive content. But there's still, and I think maybe what happens is to look at what whether the government is regulating expressive conduct, or whether it's regulating harmful effects. Well, if a directional sign is expressive conduct, surely what we have here is expressive conduct. Well, it wasn't that so much, Your Honor. The distinction was that the expressive conduct case was you had to look at the sign, and they defined, you know, it was more the ideological versus the political versus the religious. It was that you had to read the sign and say, is it going to ask me to vote for a candidate, or is it going to ask me to do something else? That was very much the expressive conduct, and that's why every single justice, I mean, Justice Kagan said the statute doesn't even pass the laugh test, let alone any other form of scrutiny, which is why it's very difficult to understand how much of that broad writing was important to the court's judgment. Sorry, Your Honor. I'm not sure what you're saying. What is the test, then? How would you write this? The test? The opinion in this case? You would simply say this is not expressive content. I'm very glad not to be writing this opinion. I would say... But write it for us. I would say this is a secondary effects case, that based on all of the cases that we've seen, all of the law that's in the circuits and including from this court, clearly Congress was not targeting communicative conduct. It doesn't say anything about what the pictures are going to look like. It doesn't say about how they're going to be produced. It doesn't have anything to do with the actual content of the images, and it doesn't reduce the amount of speech. Congress is trying to make sure that the people shown in the images are at least 18 years old. Having said that, we know from the cases that intermediate scrutiny applies. So we have the holding of... The secondary effects case. Right. And that's the key here, is what level of scrutiny is going to apply. So we know that intermediate scrutiny applies. It applies under the Renton majority opinion. It applies under the Alameda Books plurality, and it applies under Justice Kennedy's analysis. But even with all of those, there really is no good analogy to the secondary effects cases here. I mean, they all involve some aspect of land use. Your Honor, I couldn't disagree with you more. But the Supreme Court has had plenty of opportunities to extend the secondary effects doctrine, and they haven't done it. It has, but it's also talked a fair amount about the secondary effect doctrine. So for example, in Boos v. Barry, the issue was, it was a sign, a political sign waving outside an embassy. The court said, no, this isn't secondary effects, because you can target this specific set of secondary effects, because all signs have that effect, right? So if you're targeting something that's the effect of all the signs, you can't single out a particular group of signs and say this harm is a secondary effect. That would be a primary effect, anything that relates to the effect of the lessor. Boos v. Barry could have said, our secondary effect cases only apply to zoning regulations. It didn't do that. And more importantly, the theory behind the cases is not, this is zoning, although that's expressed. The theory is that the government has a broader purpose that is not related to speech. So in the zoning cases, they want to stop urban blight, they want to make sure that an adult bookstore is not going to move next door to you. What is the causation effect here? Well, Mr. Murray says that you can't establish causation in this area. But Your Honor, the evidence before the Attorney General's Commission on Pornography was that unless they had a statute that would let them know how old the people were in the pictures. That's purpose, right? It's also kind of a causation. It's like without this law, then there is a serious risk to minors. Congress is trying to make sure that the people shown in the pictures are at least 18. Why is that a primary effect? That's not a ripple effect, if you will, like the adult theater and oh, wherever they are, this happens. Why isn't that intrinsic to the very nature of the regulation? The way that the court has addressed primary and second effects is a little bit different. It's very theoretical. A primary effect, says the court, is the effect of the speech or the idea on the listener. Anything that regulates the way the expressive conduct affects the listener is a primary effect. If you look at the cases like City of Erie, Boost v. Barry, there's an RAV, Justice Scalia has an opinion to talk about. What they say is the secondary effect is a harm, or Kennedy and Alameda, it's a harm that happens to be associated with a particular speech. But what Congress wants to address, or the legislature, is the broader harm. It wants to address urban blight. In our case, it wants to address the use of children in pornography. So it has a broader, that's like the negative externality here. Congress wants to make sure that they aren't, and this is just a portion of that. It's really directed towards that interest, and it just so happens that that interest is implicated by a type of speech. Ms. Murphy, you said a few minutes ago, in the context of content-based versus content-neutral, that you're glad you're not writing this opinion. Let's get to the hard part now. Let's say Mr. Murray is correct. Let's say that we are dealing, because we have to under read, with what is on its face content-based, and naturally the implication of that then is strict scrutiny applies. If that is the case, how does the government prevail against a strict scrutiny standard? We have the longstanding concession here that we get a substantial government interest. So take it from there. We would very respectfully ask you, if you are going to change the standard of scrutiny in this case, we would very respectfully ask for an opportunity to at least brief that issue on the record, very carefully going through and, you know, with our general approval. Is there a need here for, since you've not been put to that test previously, is there a need for us to remand this case to the district court for a more elaborate record? I'm inclined to say that the record is what it is, but that the legal standard, we'd have to think very carefully about that. But we really, I mean, I really sincerely urge Your Honor to apply intermediate scrutiny here, because to us it seems like a case where, very clearly, Congress is targeting a non-speech harm. That's what it's doing. And although... But when we look at it on its face, we say, is it being targeted based on communicative content? We can't read out of the statute that it applies only to sexually explicit... But the same thing is true in all of the secondary effects cases. If you look at it on its face, the ordinance in Renton says adult theaters, and the court says, yeah, it kind of is related to the content of speech. But it doesn't mean that you don't apply intermediate scrutiny, and whether, you know, the justices that determined that that was content neutral, and they put the little sky quotes around it, because they accepted that it was isolating speech for a certain topic, they said intermediate scrutiny applied. And so did Justice Kennedy. He thought, well, you know, we can't call it anything other than content neutral. But there it is tied to the legitimacy of its purpose. I mean, these cases are talking about the fact that localities have to be able to regulate this type of situation where it's legitimate. And it's going to a purposive approach that's been rejected under Reed. Bjorn, I cannot disagree with you enough that the court in Reed, by writing broadly in a case in which an ordinance drew completely unsustainable content-based distinctions meant to take away from municipalities the power to do adult zoning, or to take away from governments the authority to address very harmful social harms that happen to be associated with speech in certain contexts. I mean, there's another view, and that is the court was perfectly happy to let the secondary effects doctrine apply in the way it has for the last couple of decades. Well, I think we strenuously believe that this really is a secondary effects case. What would be the limiting, if you were writing the opinion again, what would be the limiting factors or limiting principles so that it's not expanded to cover almost every aspect of speech? Your Honor, I think it's actually very limited, because to be a proper secondary effects case, the government has to produce evidence that the regulation is directed towards a non-speech harm. So if you remember, there's all the debate in Renton about the studies and whether those were enough. Here we would rely for that step of the analysis on the Attorney General's report and the legislative history that Your Honor's talked about in your earlier opinion. After that, you have to go through the content-based, content-neutral analysis. Obviously, I think it's very difficult to determine how that would come out. Justices Scalia and Thomas in Alameda Books did not go along with Justice Kennedy in saying that they thought that this was content-based, even though that idea was on the table. Very hard to tell what the justices would think about that. And third, after all that, you have to do the narrow tailoring analysis. So it's really not true that you can just say, oh, you know, we're just regulating the secondary effects of speech and therefore we can look to content. Because generally it's like in the sign ordinances. This court has a case wrapper where you say you can't draw the kind of distinctions that were drawn in, read, and justified under a secondary effects analysis because all the signs have the same visual clutter, the same, and you can't look to the effect of the speech on the listener because that is a primary effect. So I think the number of cases and the number of situations where there's a truly non-speech harm that just happens to be associated with speech and that the government has a significant interest in regulating is going to be very small at the end of the day. Why would the least restricted means not require that there be an age limit, say a 30, a cutoff that if someone shows identification that they're 30 years old, then they don't have to comply with the regulation? There's a possibility that that would be something that the court might decide, but as I say, I'm not really in a position to go back to the evidence and the arguments and do that. I'm sorry, maybe that should have been more of my preparation, but our argument is really focused on the suggestion that intermediate scrutiny is really right for this regulation, that it has to be true. I think the court in one of the connection opinions said, you know, it just can't be true that Congress can ban child pornography, but it can't under the First Amendment have a statute that lets it know whether the people shown in those images are minors or not. That just can't be right. And we agree with that, and we think that the Renton Doctrine squarely applies here. It's a non-speech harm. It happens to be associated with speech. The reason that the statute talks about sexually explicit speech is that's the only speech that implicates the government's interest in making sure that the people are not minors. So if we agree with you on that issue, we would have to remand, would we not? No, Your Honor, we don't think you would, because Your Honors have already applied intermediate scrutiny. So the third step of the Renton test is met. Under the first step, which is whether the legislature had actual evidence and a substantial basis that will withhold this court's review for saying that it was regulating a harm rather than, like, the content of expression. We would rely on the Attorney General's report and the legislative history that Your Honors discussed in the earlier. And then the content-based, content-neutral. I'd appreciate it if you would help us with Judge Smith's question. Assuming we found strict scrutiny, aren't there other means that could accomplish the result here? Your Honor, I understand that I should probably be being more helpful, but we would really respectfully request that we would be allowed to brief that question so that we can confirm more broadly rather than having me, in a state of less than perfect preparation, try to hypothesize what the narrow means might be. Can we take that under advisement? We would, of course, be willing to submit briefs on that, but I think it would be a much better job. You know, in our other opinions, we've reviewed the district court's ruling or application of that. So I think we also have to consider whether, in the first instance, your only shot, if you will, is before us, or whether your initial shot really should be to the district court to assess it and have our review function. So I think we'd need to consider that as well. Which occurs to me you might prefer to have two bites of the apple instead of just briefs. Well, as I say, we sincerely think that intermediate scrutiny is appropriate here. But have you thought about the prospect that if it is strict scrutiny, you might want to put forth some additional evidence or experts? I mean, the record now would show that there's a substantial over 30-actor population that would seem to be beyond what's necessary. Didn't you suggest earlier in response to a question that you were disinclined to think that that would be necessary? If Your Honors are willing to give us the opportunity to think about it longer, that would be wonderful. And I did. I suggested that the record is what it is because it was kind of factual stuff about how many images and what they were. However, if we are to be unsuccessful in persuading you that intermediate scrutiny applies, which I hope we're not, it would be very helpful if Your Honors could give us an opportunity to brief these issues under the strict scrutiny standard. And I'm sorry not to be more helpful. It's very fact-intensive for sure. That part is very fact-intensive. Mr. Murray has made a point on causation, that the primary effect here is not the cause of the secondary effect. What is your view on that? My view is that the Supreme Court, in discussing the Renton Standard, does not use language of causation. The reason that intermediate scrutiny is acceptable under that line of cases is that the government is truly not trying to regulate speech. It has a different interest, and it happens to have an impact on speech. And I would really urge the Court to look at Boosby-Barry, the RAV case, City of Erie. They talk about secondary effect being something that's not an effect on a listener, and it is associated with speech. That's the language. It's associated with speech. So there's no causation language there, and there's no First Amendment reason why it should be directly causally related. The question is, is this some kind of illicit regulation of the content of speech, or is it just a situation where the government has an interest, a broader interest, with a broader legislative program that happens to have an effect on speech? And in those contexts, it's like the conduct cases. It's like O'Brien. If you look at Erie, City of Erie, they're kind of collapsing in the conduct matter. And that's an issue here too. What Congress is regulating is not so much the speech as when you're producing the speech, they want to make sure that the people who are going to be shown are not minors. It's a record-keeping obligation. It doesn't reduce the amount of speech or the accessibility of speech. It hits all those boxes that Justice Kennedy was interested in in Alameda Books. Does Reid have any effect on what has been called the traditional hierarchy of speech, with political speech at the top? I think we're going to have to wait and see, Your Honor. I think this will be a much-litigated decision. I think it's so broad and has impacts in many First Amendment areas, and Your Honor's probably know better than me, so I think there will be follow-on litigation to feel out the area of this. But as I say, it seems clear that it hasn't overruled the secondary effects doctrine, and if the court wants to do that, it needs to do it itself. As I say, we would strongly urge you that this is a classic secondary effects case. It's a harm associated with speech. There's no, you know, as we've said, it's a record-keeping thing. There's no reduction in the amount of speech. There's no determination by the government of what the speech is going to look like. But it burdens speech. It burdens speech. It has an incidental burden on speech, but the government's interest is in protecting minors from sexual exploitation. So, I mean, it's— So every time we have anything that relates to that, or that's designed to regulate minors in pornographic situations, it's automatically intermediate scrutiny as far as you're concerned? Regardless of—we don't even need to look at the face of the statute. We just say, ah, this is what it's designed to do, therefore— It's hard to know without another concrete statute, Your Honor, because the first step under Renton is this requirement that you have evidence that's satisfactory to the court that what the legislature is targeting is not the content of speech. That's step one of Renton. But it's confusing targeting with purpose. I agree with that. But the court did it in Renton, and they had a whole separate test that doesn't have to do with looking at the content. The government has to come up with a harm, an actual non-speech harm that it wants to address. And that's why this is not some kind of huge take-over-the-world exception, because a lot of the harms—like the sign cases is good, the Your Honor's opinion in Rapper. You say you just can't draw distinctions among signs based on alleged secondary effects, because they all have the same. Would you agree that facilitating prosecution is not a proper consideration in this analysis? I mean, the court has in some cases said yes, and in other cases have said no, that a general law enforcement rationale is not— No, but I think there's much more going on here. So the purpose of the age verification, as Your Honors, I think, have recognized, is a lot of things. You want to stop the minors from passing themselves off as adults, because we all know what minors are like these days. You want to make sure that when people are creating the images, they themselves are sure that they're not creating child pornography. That's an important purpose. That is the facilitating prosecution purpose, because then people will know. But I think primarily the goal of the statutes is to make sure that the people shown in those images are at least 18 years old. Give me an example of a situation where you're regulating only a speech harm as compared to a non-speech harm. Because speech is regulated because of its effect. Reed is kind of—or Boosby-Berry. It was the case where they wanted to protect the governments from speech that would be rude to the government. So it was all about the effect of the speech on the listeners. You will be offended by this speech, so we are going to not let you have it. That is a typical speech harm. It has to do with what people are going to hear and how they're going to react to it. Or the statute that was going to protect children from being exposed to watching pornography. Again, a speech-based harm. The distinction is in the cases. So you wouldn't limit Reed to that situation? But Reed is that situation. But Reed is not limited by its language to that situation. But the holding of the case. I mean, as always, you have the holding— The holding of the case is to look at the statute on its face and see if it targets based upon communicative content. Right, and that's the holding in the context of a statute that treats religious signs different from political signs. It's an egregious, as all justices agreed, an egregious content-based discrimination. So it's very hard to know how much of that broad language— even the concurring justices within the majority in Reed write separately, and they say we think that some time, place, and manner of restrictions are going to be all right. We can regulate this. Justice Alito in his concurrence actually missed some. Right, that's right. And Justice Kennedy is in that concurrence, too. It's very difficult to know how that's going to work. You've suggested that this is going to be a heavily litigated case. And, of course, if you are wrong, at least as far as the application of secondary effects, it's reached maybe even farther than what we would contemplate so far. It's, I suppose, possible that on its face, it could actually reach campaign finance cases. I'm not going to opine on that, Your Honor. I didn't think so. All right, any further questions? Thank you very much for your time, and we urge you to apply intermediate scrutiny. Thank you, Ms. Murphy. Mr. Murray. Mr. Murray, let me just ask if you would agree with Ms. Murphy that because we previously analyzed this case under intermediate scrutiny, that if, hypothetically, we determined that the government's position is correct, that it would not be necessary to remand the case to the district court. Would you agree with that? Actually, I don't. Because, as we pointed out in our supplemental brief, if you're going to shift gears and apply Renton, then you've got to apply the burden-shifting paradigm of Almeda Books. And when you do that, we think we should prevail. I won't belabor the point because we laid it all out in our supplemental brief. But, no, if you go down the road of Renton, now you've got Almeda Books that tells you that we have the opportunity to rebut the evidence that the government has in support of its rationale. And if we do, then the burden shifts back to them to renew support. We think that the record shows that we rebutted their rationale under Almeda Books' paradigm, which is different from the Ward paradigm. So I hope I answered that question. But I do want to say causation is required in secondary effects. That's what they called an effect, a secondary effect of the constitutionally protected speech. That's what the Renton decision is all about. That's what Young v. American Mini Theaters, which started this all, is all about. Because they had the anti-Skid Row ordinance in Detroit. And they added adult bookstores to it because they found that those stores caused the blight and the increase in crime. And Justice Kennedy keeps saying in his concurring opinion in Almeda Books that zoning context is the built-in rationale that rebuts the presumption usually that a content-based law is unconstitutional. He even states, he says the central holding of Renton, and then he says a zoning restriction that is designed to decrease secondary effects and not speech, should be subject to him. So he does pretty much cabin. Yes, Your Honor. And you know, it's funny. In the Reid case, the government filed an amicus brief. And they argued vociferously that the sign ordinance in Reid was content-neutral because it was justified without reference to the content of the speech. And the Supreme Court rejected the very same argument that Ms. Murphy is making today in Reid itself. And by the way, Reid was dealing with noncommunicative harms associated with those directional signs. That's why the Ninth Circuit had upheld it as a content-neutral regulation of the noncommunicative aspects of directional signs. And when they got down to applying strict scrutiny, they cited that the interests that were supposed to be furthered by the sign ordinance were aesthetics and traffic safety. Those are noncommunicative harms. So you can't, if you limit, if you want to say that as long as the government is targeting noncommunicative harms associated with speech, you can justify just about any content-based regulation on that basis. And finally, it seems to me that it's worth going back and actually looking at the words of the statute. Whoever produces any book, magazine, periodical, film, videotape, etc., which contains one or more visual depictions of actual sexually explicit conduct. You don't have to go any further than that. It uses the word contains. If that isn't content, I don't know what is. Thank you very much, Mr. Murray, and thank you to both sides. We're really getting to know each other very well. So it's good to have you at our house again. I would ask if we could have a transcript of the argument prepared, please. And with that, we will take both the entire matter as well as the government's request for a supplemental briefing under advisement. Thank you very much.